UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MISTY M. COMSTOCK                )<br>                                                         )<br>                  Plaintiff,            )<br>                                                         )<br>         v.                                     )<br>                                                         )<br>JO ANNE B. BARNHART,        )<br>Commissioner of Social Security, )<br>                                                         )<br>                  Defendant.         )<br>_____)  | CASE NO. C04-1635-JCC<br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Misty Comstock appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

I. PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") on July 30, 2001, alleging disability since May 10, 2001, and identifying her impairment as "BAD [bipolar affective disorder] manic with psychosis NOS, poor functioning." Tr. 52. The Social Security Administration denied Plaintiff's application initially (Tr. 20, 22-25) and upon reconsideration (Tr. 21, 28-30). A hearing was held before Administrative Law Judge ("ALJ") Edward P.

REPORT AND RECOMMENDATION
PAGE - 1

Nichols, on August 19, 2003.  Plaintiff, who was represented by counsel, testified at the hearing. Tr. 349-372.  Plaintiff's mother, Janeen Manney, and a vocational expert ("VE"), Paul Prachyl, also testified at the hearing.  Tr. 373-389.  The ALJ issued an unfavorable decision on November 18, 2003, finding that Plaintiff is able to perform a significant number of jobs in the State and national economies despite her limitations, and thus, she was not under a disability at any time through the date of the decision.  Tr. 19.  On May 27, 2004, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 2-3.  Plaintiff timely filed her appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and remand for payment of benefits.  Plaintiff argues that the ALJ erred by: (1) denying disability based on Plaintiff's failure to consistently take medication for her bipolar disorder, without following the mandatory provisions of SSR 82-59; (2) ignoring the disability opinion of an examining physician, as well as the limitations identified by the nonexamining state agency physicians; (3) failing to properly evaluate Plaintiff's residual functional capacity pursuant to SSR 96-8p; (4) relying on the VE's opinion that was based on a deficient RFC assessment; (5) improperly rejecting the testimony and written statement of lay witnesses; and (6) failing to articulate "clear and convincing" reasons for rejecting Plaintiff's testimony.  Defendant responds that the Commissioner's decision should be affirmed because it is supported by substantial evidence and is free of legal error.

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

REPORT AND RECOMMENDATION
PAGE - 2

defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual

functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V. SUMMARY OF THE RECORD EVIDENCE

Plaintiff, who was born in September, 1979, was 23 years old at the time of the hearing before the ALJ. Tr. 349. She has an eighth grade education (Tr. 349) and she previously worked as a file maker/organizer, engraver, and house cleaner (Tr. 60, 352-54). In her disability report, Plaintiff indicated that her condition limits her ability to work because she is unable to focus and concentrate, unable to relate to others; unable to interact with others; unable to maintain appropriate behavior, and she always worries about how she presents herself. Tr. 59. Plaintiff has been diagnosed with a bipolar disorder, which has led to two incidents of psychotic behavior that required hospitalization: the first time, when trying to jump from a moving car and then running naked down a bike trail (Tr. 141), and the second time, a year later, after being found running down a street naked, praying, and chanting (Tr. 229). Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

## VI. THE ALJ'S DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. Tr. 18. The ALJ found that Plaintiff has severe impairments consisting of a bipolar disorder and substance abuse disorder, but he determined that these impairments do not meet or equal the criteria of any listing. Tr. 16, 18. The ALJ found that

1 Plaintiff has the residual functional capacity to perform the exertional requirements of all work.
2 However, due to her bipolar disorder and substance abuse problems, he also found that Plaintiff
3 is limited to simple, repetitive, low concentration type work with no complex instructions; she
4 should working around crowds or the public; and she initially requires close supervision. Tr.
5 18. The ALJ, therefore concluded that Plaintiff is unable to perform her past relevant work. *Id.*
6 In reaching this conclusion, the ALJ found that the testimony of Plaintiff and her witness were
7 not credible to the extent that it may be interpreted that Plaintiff has functional limitations so
8 severe as to preclude all work activity. *Id.* At step five, the ALJ found that there are a
9 significant number of jobs in the State and national economies that Plaintiff can perform,
10 including inspector/packager and packager. Tr. 19. Accordingly, the ALJ concluded that
11 Plaintiff was not disabled at any time through the date through the date of the decision. Tr. 19.

## VII. DISCUSSION

### A. PHYSICIANS' OPINIONS

Plaintiff argues that the ALJ erred by ignoring, without comment, the disability opinion of an examining physician, as well as limitations identified by nonexamining state agency physicians.

#### (1) Examining Physician's Opinion

The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) *(*citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1999)). The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

REPORT AND RECOMMENDATION
PAGE - 5

In the present case, although Plaintiff notes that the ALJ acknowledged the finding by the Commissioner's psychiatric consultative examiner, Dr. David Sandvik, that she has a GAF of 45,[1] Plaintiff argues that "the ALJ totally ignored the assigned GAF which equates to a finding of disability." However, the record does not support this claim.

In his assessment and explanation of Plaintiff's GAF, Dr. Sandvik states the following:

> Global Assessment of Function relevant to psychiatry: code 45, *serious symptoms*, with some impairment in reality testing and communication. Her speech is latent in response; her mood is incongruent with her perception and representation of it. She has impairment in several areas including judgment, mood, and is confused at times in her thought processes.

Tr. 190 (emphasis added). In summarizing Dr. Sandvik's opinion, the ALJ stated, "Global Assessment of Functioning Scale Score was estimated to be 45, which is consistent with *severe symptoms*." Tr. 14 (emphasis added). Here, the ALJ's use of the term "severe" in regard to this GAF, suggests that not only did the ALJ accept Dr. Sandvik's assessment of Plaintiff's GAF but also that the ALJ associated the GAF of 45 with a slightly greater degree of seriousness in symptoms. Accordingly, I conclude that the ALJ did not ignore Dr. Sandvik's GAF assessment, and therefore he did not err.

(2) <u>Nonexamining State Agency Physician's Opinion</u>

Social Security Ruling 96-6p provides that an ALJ cannot ignore the opinions of State agency physicians, and must explain the weight given to these opinions in their decisions. The opinions of State agency consultants can be given weight only insofar as they are supported by

---

[1] Clinicians use a Global Assessment of Functioning ("GAF") scale to measure a claimant's psychological, social, and occupational functioning. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). A GAF score of 41-50 is defined as "serious symptoms (e.g., suicidal ideation, *severe* obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, at 34 (4th ed. 2000).

1  evidence in the case record, including any evidence received at the ALJ level that was not before

2  the State agency. SSR 96-6p

3    Plaintiff argues that the ALJ ignored and thereby effectively rejected limitations

4  identified by nonexamining State agency physicians. As the basis for this claim, Plaintiff refers

5  to the Psychiatric Review Technique ("PRT") (Tr. 207-220) and the Mental Residual Functional

6  Capacity Assessment ("Mental RFC") (Tr. 221-24) forms from J. Nelson, Ph.D., and Alex

7  Fisher, Ph.D., who reviewed Plaintiff's file for Disability Determination Services on December

8  4, 2001, and March 22, 2002, respectively. Tr. 221-224. Plaintiff notes that these

9  nonexamining physicians opined that she is "moderately limited" in: (1) ability to perform

10 activities within a schedule, maintain regular attendance and be punctual within customary

11 tolerances (Tr. 221); and (2) ability to get along with coworkers or peers without distracting

12 them or exhibiting behavioral extremes (Tr. 222). They also found that difficulties in

13 maintaining social functioning and difficulties in maintaining concentration, persistence, or pace

14 exist at a "moderate" degree of limitation as a result of Plaintiff's mental disorders. (Tr. 217).

15 Plaintiff argues that by ignoring these multiple mental limitations identified by the nonexamining

16 State agency physicians, the ALJ clearly violated SSR 96-6p and SSR 96-8p and the

17 corresponding regulations.

18   Careful review of the record reveals that while the ALJ did not separately discuss each

19 of the specific limitations in Plaintiff's mental functioning listed above, the ALJ's decision does,

20 in fact, include a summary of the opinions by Dr. Nelson and Dr. Fisher that are set out in their

21 notes and explanations at the end of PRT and Mental RFC forms. Tr. 14. Specifically, the ALJ

22 notes,

23 > They were of the opinion the claimant has a severe bipolar disorder, but had
> significantly stabilized since her May 2001 hospitalization. They noted that her
24 > variable mood might interfere at times with prolonged concentration and optimal
> schedule compliance. Further, her social anxiety might dampen her ability to

25

26 REPORT AND RECOMMENDATION
PAGE - 7

> relate to other individuals to some degree, but the claimant appears generally capable of cooperating on work assignments. (Internal citations omitted).

Tr. 14. Moreover, the ALJ's assessment of Plaintiff's residual functional capacity further demonstrates that he did not ignore or reject these opinions regarding the limitations on Plaintiff's concentration, schedule compliance, and ability to relate to others because the ALJ found that due to her bipolar disorder and substance abuse problems, "[Plaintiff] is limited to simple, repetitive, *low concentration* type work, with no complex instructions. She should *avoid working around crowds or the public* and initially *requires close supervision*. Tr. 18 (emphasis added). Thus, I conclude that the ALJ did not err because he did not ignore these assessments of Plaintiff's limitations by Dr. Nelson and Dr. Fisher.

B.    Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing her credibility. If a claimant has established an underlying impairment which reasonably could be expected to produce the alleged subjective complaints and there is no evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988) (Varney I).

The ALJ must identify what testimony he finds not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (1993). In assessing credibility, the ALJ may consider, for example: 1) ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and prior inconsistent statements concerning the symptoms; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical

REPORT AND RECOMMENDATION
PAGE - 8

1  evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d
2  853, 856-57 (9th Cir. 2001).

3        At the hearing, Plaintiff testified that she is unable to work because "it always seems like
4  I'm receiving messages . . . like God or Satan is talking to me and telling me things through
5  other people." Tr. 356. She also indicated that she is scared all the time and feels like she is in
6  hell all the time. Tr. 352. Plaintiff described her two hospitalizations as occurring in 2002,
7  when she "thought that witchcraft was real" and she was "doing things to try to break a curse"
8  that was put on her (Tr. 357-58), and in May, 2001, when she was trying to do "Hail Mary's"
9  because she "thought she had died and was in hell or a middle world, and she needed to pray
10 herself back, to go to heaven" (Tr. 359). Plaintiff testified that she is uncomfortable interacting
11 with other people if they get negative and that she is "real watchful" around a lot of people. Tr.
12 360. She indicated that a lot of the time she has difficulty concentrating and understanding
13 things. Tr. 361.

14       Plaintiff stated that she gains weight when she takes her medication. Tr. 362. She also
15 indicated that the medication mostly makes her tired and makes her "not get up and act out,"
16 but it does not take away the messages. Tr. 363. Plaintiff testified that she gets the shakes in
17 her hands as a side-effect of the medicine. Tr. 366, She stated that she's "good about taking it
18 [her medication], it's such a habit now." Tr. 366. Plaintiff testified that she does not run
19 errands (e.g., going to the grocery store, bank, etc.) and that her Mom needs to drives her
20 around because "if there was ever any kind of a problem, I would need her to be right there to
21 help take over and talk for me." Tr. 367. Plaintiff stated that she likes to escape by
22 rollerblading with music blaring in her ears, and she likes to play pool. Tr. 368. She also hangs
23 out and smokes pot with her friends a few times a week. (Tr. 369). She helps her mom clean
24 the house and she has her own apartment downstairs in her parents house that she has to keep

25
26 REPORT AND RECOMMENDATION
PAGE - 9

clean and do laundry. Tr. 371.

In evaluating Plaintiff's testimony, the ALJ concluded that Plaintiff was not fully credible in allegations that she is totally disabled and unable to work due to bipolar disorder. Tr. 16, 18. However, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony. This Court disagrees.

The ALJ articulated a number of clear and convincing reasons, which are supported by the record, for finding Plaintiff not fully credible. The ALJ identified the following reasons for his conclusion: 1) the objective evidence is not consistent with Plaintiff's allegations, 2) she has received minimal treatment over the last three years, 3) her impairment is generally controlled with the use of medication, 4) she retains the ability to perform many activities of daily living with minimal difficulty and 5) her work history suggests she is not highly motivated to work. Tr. 16.

More specifically, the ALJ noted that at age 24, Plaintiff's earning records show relatively poor earnings levels, considering that she had not been in school since eighth grade. Tr. 15. Review of the records reflects that earnings by Plaintiff in 1998 and 1999 in the amounts of $8,806.76 and $2,095.89, respectively. Tr. 57. He further noted that Plaintiff's poor work history and her statement to physicians that $339.00 in GAU benefits are "enough" to get by, indicate that she is not highly motivated to work. Tr. 15, 285. Additionally, the ALJ noted that in both instances in which Plaintiff was hospitalized due to psychotic behavior, she was quickly stabilized with the introduction of medications. *See e.g.,* Tr. 143, 262. He further pointed out that after Plaintiff's second hospitalization, she stated that she was aware that her decompensation had been caused by her failure to take her medications and that she would need to be consistent with her medications in the future. Tr. 15, 267. The ALJ noted that Plaintiff has not had any significant mood de-stabilizations since her second hospitalization. Tr. 15. He

concluded that the Plaintiff's bipolar disorder is well-controlled with the use of medication and her symptoms are relatively mild. *Id.*

The ALJ noted that there was no evidence that Plaintiff reported the symptoms she identified in her testimony regarding experiencing suicidal thoughts and hearing the voice of God and Satan on a regular basis to her treating physicians. Tr. 15-16. The ALJ also highlighted the fact that during medical appointments in November and December 2002, the claimant stated that her medications, home life, symptoms, and social life were all good; and she was going out often, rollerblading, gardening, socializing, and even doing some karaoke. Tr. 16, 320, 322, 328.

Finally, the ALJ noted that although Plaintiff appeared somewhat slow in her presentation at the hearing, which is consistent with side effects caused by her medication, Disability Determination Services assessed that Plaintiff has moderate functional limitations, she engages in recreational activities, has friends with whom she socializes, and sees a regular boyfriend. The ALJ found these facts to be inconsistent with her reports of debilitating social anxiety, fear and distrust. He also indicated that Plaintiff's admitted use of marijuana a few times a week, that she enjoys hanging out with her friends and going into "total chill mode," and her testimony and demeanor during the hearing were "more consistent with an individual who has chosen not to work because she has little discipline and little need to do so." Tr. 16.

In light of these facts, I conclude that the ALJ identified clear and convincing reasons based on Plaintiff's daily activities and medical evidence tending to discount the severity of her symptoms. Accordingly, I find that the ALJ did not err in finding Plaintiff's testimony not entirely credible.

C.   <u>Lay Witness Testimony and Written Statements</u>

Plaintiff argues that the ALJ improperly rejected her mother's testimony and totally ignored the written statement submitted by her stepfather, which also describes her symptoms and limitations. An ALJ must consider a lay witness' observations of how the claimant's impairment affects his ability to work. 20 C.F.R. § 404.1513(e)(2); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). An ALJ may reject such testimony only if "reasons germane to each witness" are given. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ acknowledged that Plaintiff's mother, Janeen Manney, testified and that her testimony was similar to and bolstered that of Plaintiff. Tr. 15. He specifically noted her testimony that Plaintiff has difficulty understanding instructions, will not take medications if not told to do so, is suspicious and scared of people, has bad taste in boyfriends, and basically stopped developing emotionally at age 14. *Id.* The ALJ's decision discusses his assessment of Mrs. Manny credibility along with that of Plaintiff, articulating the reasons set out in subsection "B" above for finding her testimony not fully credible. Given that Mrs. Manny's testimony was consistent with Plaintiff's in support of the allegation that Plaintiff is totally disabled and unable to work, I conclude that the reasons articulated by the ALJ are likewise "germane" to this lay witness and the ALJ did not err in assessing her credibility.

Plaintiff's stepfather, Dick Manney, submitted responses to a Daily Activities Questionnaire about Plaintiff. Tr. 91- 94. The ALJ's decision does not mention Mr. Manney's statement. However, the Commissioner need not discuss *all* evidence presented to her. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, she must explain why "significant probative evidence has been rejected." *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). The content of Mr. Manney's written statement is generally consistent with his wife's testimony regarding Plaintiff's difficulty following instructions and her need to be

REPORT AND RECOMMENDATION
PAGE - 12

reminded to take medication in the morning, and it is also consistent with Plaintiff's testimony regarding her daily activities. Because Mr. Manney's written statement provided no evidence that was not already before the ALJ, it is not significantly probative. Moreover, his statement included no observations of how Plaintiff's impairments affect her ability to work. Therefore, I find that the ALJ did not err by not commenting on Mr. Manney's written statement.

D.   RFC Assessment

Plaintiff argues that the ALJ failed to properly evaluate her residual functional capacity pursuant to SSR 96-8p. A claimant's RFC is based on what she can still do despite her limitations. *See* 20 C.F.R. § 416.945(a) (2001). At the hearing level, the ALJ evaluates a claimant's RFC at step four of the sequential evaluation process by considering all of the evidence, including any physical and mental limitations. *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p. SSR 96-8p provides that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." The ALJ is free to accept or reject restrictions that the claimant alleges provided his findings are supported by substantial evidence. *Magallanes*, 881 F.2d at 756-57.

The Social Security Regulations require that the ALJ undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c) and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p.

REPORT AND RECOMMENDATION
PAGE - 13

Here, the ALJ found that the record is consistent with Plaintiff having the following residual functional capacity:

> The claimant does not have any physical or mental impairment and retains the ability to perform the exertional requirements of all work activity.  Due to her bipolar disorder and substance abuse disorder, the claimant is limited to simple, repetitive, low concentration type work, with no complex instructions.  She should avoid working around crowds or the public and should initially receive close supervision.

Tr. 17, 18.  Plaintiff argues that the ALJ failed to assess whether she is capable of working on a "regular and continuing basis," even though she suffers from fatigue from medication, delusions, moderate difficulties in concentration, persistence, or pace, and moderate limitations in the ability to perform activities within a schedule and maintain regular attendance as found by the nonexamining State agency physicians.  She also argues that the ALJ failed to consider her reaction to stress when formulating the RFC.  Plaintiff contends the ALJ found that she had an RFC for certain work without conducting a function-by-function analysis with a "narrative discussion describing how the evidence supports each conclusion."  Further, Plaintiff argues that the ALJ failed to consider the side effects from her medication, including slowness and shakes in her hands, which could clearly affect her persistence and pace.

However, as noted in subsection "A(2)" above, the ALJ acknowledged and apparently accepted the functional limitations identified in the mental RFC assessment completed by the nonexamining State agency physicians. Tr. 217.  Because he had the benefit of the function-by-function assessment set out in their evaluation, there was no need for the ALJ to duplicate their effort.  Furthermore, in evaluating Plaintiff's subjective complaints and symptoms, the ALJ acknowledged that during the hearing, Plaintiff was pleasant, but somewhat "slow" in her presentation.   The ALJ concluded that this is consistent with the side effects that are often caused by Plaintiff's medications and he noted that the consultative examination did note some effect of the claimant's medications on her functional abilities. Tr. 16,   Additionally he

indicated that Disability Determination Services assessed Plaintiff's functional limitations as only moderate in nature. *Id.* The ALJ also concluded that the fact that Plaintiff engages in recreational activities, has friends with whom she socializes, and sees a regular boyfriend is inconsistent with her reports of debilitating social anxiety, fear and distrust. Tr. 16.

These facts demonstrate that the ALJ considered the appropriate, credible evidence required for an RFC assessment. Therefore, I conclude that the ALJ did not err in his RFC determination.

E.   ALJ's Reliance on VE's Testimony

Plaintiff argues that the ALJ's reliance on the VE's testimony is flawed because the hypothetical presented to the VE was based upon a deficient RFC assessment and therefore, did not contain all of Plaintiff's limitations. As noted in subsection "D" above, the ALJ properly evaluated Plaintiff's residual functional capacity. Therefore, I conclude that because the ALJ's hypothetical to the VE was based on a proper RFC assessment, the ALJ did not err in relying on the VE's testimony that Plaintiff could perform a significant number of jobs existing in the State and national economies, including the jobs of inspector/packager and packager. Tr. 19, 384-85.

F.   Alleged Denial of Disability Based on Plaintiff's Failure to Take Medication

Plaintiff argues that the ALJ erred by denying Plaintiff's disability application based upon her failure to consistently take medication for bipolar disorder, without complying with the mandatory requirements of SSR 82-59. However, there is nothing in the ALJ's decision indicating that Plaintiff's disability claim was denied on this basis. In fact, in the context of his conclusion that the objective medical evidence as a whole was not consistent with Plaintiff's allegations of a disabling mental impairment, the ALJ's reference to Plaintiff's medication consisted of noting that Plaintiff's condition stabilized when she is on medication; that her second hospitalization occurred after she stopped taking her medications for two months;

claimant's stated awareness that her decompensation had been caused by her failure to take her medications and that she would need to consistently take her medications in the future; and that claimant had not had any significant mood destabilizations since her second hospitalization. Tr. 15. Accordingly, I conclude that Plaintiff's claim that the ALJ denied her disability application based on her failure to consistently take her medication is without merit.

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff SSI benefits is supported by substantial evidence and is free of legal error. Based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED. A proposed Order accompanies this Report and Recommendation.

DATED this 16th day of September, 2005.

_____
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 16