UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MISTY M. COMSTOCK,

    Plaintiff,

  v.

JO ANNE B. BARNHART, United States Commissioner of Social Security

    Defendant.

CASE NO. C04-1635C

ORDER

    This matter comes before the Court on Plaintiff's application for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") (Dkt. No. 5), the Report and Recommendation of United States Magistrate Judge Monica J. Benton ("R&R") (Dkt. No. 22), Plaintiff's Objections to the R&R (Dkt. No. 23), and Defendant's response to those objections (Dkt. No. 24). Having reviewed the materials submitted by the parties and determined that oral argument is not necessary, the Court hereby finds and rules as follows.

## I.    BACKGROUND

    Plaintiff applied for Supplemental Security Income on July 30, 2001, alleging disability since May 10, 2001 as a result of "BAD [bipolar affective disorder] manic with psychosis NOS; poor functioning." (Administrative Record 52 [hereinafter "AR"]). The Social Security Administration denied Plaintiff's

ORDER – 1

application initially (AR 22) and on reconsideration (AR 28). A hearing was held before an Administrative Law Judge ("ALJ"), who subsequently denied Plaintiff's claim. (AR 12–19). The ALJ found that Plaintiff is able to perform a significant number of jobs in the state and national economies despite her limitations, and therefore, she is not disabled within the meaning of the Social Security Act. (AR 18–19). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 2.) Plaintiff timely filed an appeal of that decision with this Court. (Dkt. No. 5.)

Plaintiff was twenty-three years old at the time of the hearing before the ALJ. (AR 349.) She has an eighth-grade education and previously has worked as a file maker/organizer, engraver, and house cleaner. (AR 352–54.) Plaintiff indicated in her disability report that her condition limited her ability to work because she is unable to focus and concentrate, unable to relate and interact with others, always worrying about how she presents herself, and is unable to maintain appropriate behavior. (AR 59.) Plaintiff has been diagnosed with a bipolar disorder and a substance abuse disorder. (AR 18.) Other evidence of Plaintiff's condition relevant to her claim is incorporated into the discussion below.

Judge Benton recommends in her R&R that the Commissioner's decision be affirmed. (R&R 1.) Plaintiff objects on the basis that the ALJ's decision was not supported by substantial evidence and was reached in legal error. (R&R 2; Pl.'s Obj. 6–7.)

## II. STANDARDS OF REVIEW

This Court reviews the record *de novo* when considering objections to a magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1).

A denial of benefits will be disturbed only if it is not supported by substantial evidence on the record as a whole or it is based on legal error. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Although this Court must consider the administrative

ORDER – 2

record as a whole and weigh evidence that undermines as well as supports the decision *de novo*, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and reconciling ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If there is more than one rational interpretation of the evidence, one of which supports the ALJ's decision, a court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679.

### III. ANALYSIS

Having conducted a *de novo* review of the R&R, all objections to the R&R, Defendant's Response to Plaintiff's Objections, the record, and applicable legal authorities, the Court finds that the ALJ's decision was supported by substantial evidence and was not reached in legal error. In her Objections, Plaintiff raises substantially the same arguments that were raised before Magistrate Judge Benton. Plaintiff argues that the ALJ erred by (1) ignoring the disability opinion of the Commissioner's examining physician, as well as the limitations identified by the Commissioner's nonexamining state agency physicians; (2) failing to properly evaluate Plaintiff's residual functional capacity ("RFC") pursuant to S.S.R. 96-8P; (3) relying on the vocational expert's testimony that Plaintiff was not disabled that was based on a deficient RFC assessment; (4) rejecting the testimony of lay witnesses; (5) failing to articulate "clear and convincing" reasons for rejecting Plaintiff's testimony; and (6) denying Plaintiff's claim based upon her failure to consistently take medication for her disorders. (Pl.'s Obj. 1–6.)

#### A. Opinions of Physicians

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for ignoring the disability opinion of Dr. Sandvik, the Commissioner's psychiatric consultative examining physician. (Pl.'s Obj. 1.) The ALJ must provide clear and convincing reasons for rejecting the opinion of an examining physician. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). While Plaintiff recognizes that the ALJ acknowledged the finding of Dr. Sandvik that Plaintiff has a GAF

ORDER – 3

of 45,[1] Plaintiff argues that Dr. Sandvik's opinion was ignored because the ALJ did not specifically assign weight to it.

The ALJ did not reject or ignore the opinion of Dr. Sandvik. Rather, the ALJ gave controlling weight to Dr. Sandvik's evaluation when the ALJ determined that Plaintiff had a medically severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii) (Determining whether impairment is severe or not is the second step in a five-step sequential evaluation process for determining disability.). The ALJ summarized Dr. Sandvik's opinion as follows:

> A consultative psychiatric evaluation was performed by David Sandvik, M.D., on November 1, 2001. The claimant complained of long standing depression and stated that she was receiving counseling once a month at Northgate Counseling Center. She denied any history of auditory or visual hallucinations or suicidal thoughts. Dr. Sandvik stated that the claimant was fully oriented, but seemed at times rather confused at the questions presented to her. She was able to subtract serial 7s without error and could repeat up to 5 digits backward. These findings are normal, as was cognitive testing. Emotionally, the claimant's presentation was incongruent with her report of being depressed. Dr. Sandvik stated that she frequently appeared to find questions put to her as amusing and her mood appeared elevated. Global Assessment of Functioning Scale Score was estimated to be 45, which is consistent with severe symptoms.

(AR 13–14.) The ALJ goes on to state later in his decision that "During her consultative psychiatric evaluation with Dr. Sandvik in November 2001, the claimant could perform serial 7s without difficulty and could recall 5 digits forward and backward. Cognitive functioning was normal." (AR 18.) The ALJ concluded from the evidence that "the claimant has the following severe impairments[:] a bipolar disorder and substance abuse disorder. The combination of these impairments significantly limits her ability to perform basic work activities, and thus is severe." (AR 16.) At this second step in the evaluation process the ALJ accepted the conclusion of Dr.

---

[1] "Clinicians use a [Global Assessment of Functioning ("GAF")] to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. A GAF between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep a job)." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

ORDER – 4

Sandvik that Plaintiff's impairments were severe. Therefore, the ALJ did not erroneously ignore Dr. Sandvik's assessment.

Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting the numerous limitations identified by the nonexamining state agency physicians. (Pl.'s Obj. 3.) Plaintiff notes that the ALJ ignored important limitations identified by the Disability Determination Services physicians, including moderate limitations in the abilities to maintain regular attendance and be punctual within customary tolerances, as well as getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id*. at 2.) However, the ALJ could not have ignored the limitations identified by the state agency physicians because his decision includes a summary of their opinion:

> [The state agency physicians] were of the opinion the claimant had a severe bipolar disorder, but had significantly stabilized since her May 2001 hospitalization. They noted that her variable mood might interfere at times with prolonged concentration and optimal schedule compliance. Further, her social anxiety might dampen her ability to relate to other individuals to some degree, but the claimant appears generally capable of cooperating on work assignments. No limitations were assessed in the area of activities of daily living, and there was no evidence of episodes of decompensation.

(AR 14.) The ALJ also seems to have incorporated the opinions of the state agency physicians in his determination of the Plaintiff's RFC when he stated that, because of her mental disorders, "the claimant is limited to simple, repetitive, low concentration type work, with no complex instructions. She should avoid working around crowds or the public and should initially receive close supervision." (AR 17.) Instead of ignoring the opinions of the state agency physicians, the ALJ relied heavily on them in determining Plaintiff's limitations.

**B.    Evaluation of Plaintiff's RFC**

Plaintiff next argues that the ALJ erred by failing to properly evaluate Plaintiff's RFC pursuant to S.S.R. 96-8P (Cum. Ed. 1996) because (1) the ALJ did not assess Plaintiff's abilities on a regular and continuing basis for eight hours a day, five days a week and (2) the ALJ merely

ORDER – 5

relied on the nonexamining state physicians function-by-function assessment instead of performing his own function-by-function assessment of Plaintiff's RFC. (Pl.'s Obj. 3.)

First, there is no indication that the ALJ did not assess Plaintiff's abilities on a regular and continuing basis. In evaluating the Plaintiff's RFC the ALJ found that "the claimant does not have any physical impairment and retains the ability to perform the exertional requirements of all work activity" but is limited by her mental conditions to "simple, repetitive, low concentration type work, with no complex functions. She should avoid working around crowds or the public and should initially receive close supervision." (AR 17.) Such findings do not indicate that the ALJ did not assess Plaintiff's abilities on a regular and continuing basis.

Furthermore, the ALJ's decision complied with the requirements in S.S.R. 96-8P. That Ruling provides that the RFC assessment must assess the claimant's "work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d)" of 20 C.F.R. § 416.945. The ALJ assessed the Plaintiff's functions in paragraphs (b) (physical abilities) and (c) (mental abilities). (*See* AR 17.) The ALJ did not discuss functions under paragraph (d) (other abilities affected by impairment(s)); therefore it can be inferred that there were no other functions affected. The ALJ made this RFC assessment after considering all of the medical evidence before him, as he detailed the reports of the examining physician Dr. Sandvik and the nonexamining state agency physicians (whose report also gives a function-by-function assessment of Plaintiff's limitations). (AR 13–14, 217.) The ALJ then went on to conclude that, in light of his RFC analysis and the testimony of the vocational expert, the Plaintiff was unable to perform her past relevant work. (AR 17.) Therefore, the ALJ's decision complied with the requirements of S.S.R. 96-8P.

### C.  Vocational Expert's Testimony

Plaintiff next argues that the ALJ erroneously relied on the vocational expert's testimony to find that the claimant was not disabled because the hypothetical presented to the expert was

ORDER – 6

based on a deficient RFC assessment. Because in Section B the Court finds that the ALJ's evaluation of Plaintiff's RFC was proper, the ALJ's reliance on the vocational expert's testimony that Plaintiff could perform a significant number of jobs in the existing economy was not erroneous.

**D.     Rejection of Witness Testimony**

Plaintiff next argues that the ALJ erred by failing to articulate specific reasons for rejecting the testimony of the Plaintiff's mother and totally ignoring the written statement from the Plaintiff's step-father. (Pl.'s Obj. 5.) In rejecting lay witness testimony, an ALJ must give reasons that are germane to each witness. *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ gave specific and convincing reasons for rejecting the testimony of the Plaintiff's mother as not credible. The ALJ rejected the testimony of the Plaintiff's mother because he found her conclusion that Plaintiff was unable to work inconsistent with the Plaintiff's "ability to perform many activities of daily living with minimal difficulty." (AR 16.) The ALJ went on to state that the testimony of the Plaintiff's mother only established that the Plaintiff was unwilling, not unable, to work. (*Id*.)  Therefore, the ALJ's rejection of Plaintiff's mother's testimony was not erroneous.

The ALJ also did not err by not commenting specifically on the letter written by Plaintiff's step-father. The ALJ need not discuss all evidence presented. *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). The ALJ must only explain why significant probative evidence has been rejected. *Id.* at 1395. While Plaintiff is correct that *Vincent* has been narrowed, the legal rules cited above and by the R&R have not been called into question by the cases cited by Plaintiff. Those cases do not address the question of whether lay witness testimony that is consistent with that of other lay witnesses is significantly probative such that the ALJ must give specific reasons for rejecting it. *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968,

ORDER – 7

974–75 (9th Cir. 2000) (failure to consider *any* lay evidence erroneous); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (reasons for rejecting lay witness testimony not supported by record); *Smolen v. Chater*, 80 F.3d 1273, 1288–89 (9th Cir. 1996) (rejection of lay witness testimony simply because it was from family not sufficient reason); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (rejection of lay witness testimony on grounds that it repeated Plaintiff's complaints erroneous).  Because the testimony of Plaintiff's step-father offered nothing over and above what testimony had already been given by Plaintiff herself and Plaintiff's mother, that testimony was not "significantly probative" and therefore need not be specifically rejected.

### E. Rejection of Plaintiff's Testimony

Plaintiff next objects to the R&R by maintaining that the ALJ erred by rejecting Plaintiff's testimony without providing clear and convincing reasons.  The ALJ rejected the Plaintiff's testimony for the same reasons as the testimony of Plaintiff's mother, that is, the ALJ found the allegations that Plaintiff was unable to work because of her limitation not fully credible since they were not consistent with the objective evidence showing Plaintiff is able to perform many of the activities of daily living. (AR 16.)  Therefore, just as in rejecting Plaintiff's mother's testimony, the ALJ gave clear and convincing reasons for rejecting the testimony of Plaintiff herself.

### F. Denying Disability on Failure To Consistently Take Medication

Finally, Plaintiff argues that the ALJ erred by denying Plaintiff's disability application based on Plaintiff's failure to consistently take medication for her impairments in violation of S.S.R. 82-59 (Cum Ed. 1982).[2]  (Pl.'s Obj. 6.)  However, the ALJ did not base his denial of

---

[2] This ruling provides that "[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability."

ORDER – 8

Plaintiff's disability application on Plaintiff's failure to take medication. Nowhere in the ALJ's findings or opinion does he state that Plaintiff is not disabled because she fails to take prescribed medication. (AR 18–19.) Therefore, because the ALJ did not make his determination based on Plaintiff's failure to take medication he need not comply with the requirements set forth in S.S.R. 82-59.

**IV.   CONCLUSION**

For these reasons, the Court concludes that Plaintiff's objections lack merit and hereby ADOPTS the Report and Recommendation and ORDERS that this action be DISMISSED with prejudice. The Clerk is DIRECTED to send copies of this Order to all counsel and to Judge Benton.

SO ORDERED this 22nd day of November, 2005.

John C. Coughenour
United States District Judge

ORDER – 9